UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| BEAM PARTNERS, LLC, and | ) | |
| TERRY S. SHILLING | ) | |
| | ) | Civil No. 3:17-cv-004-GFVT |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| NANCY G. ATKINS, LIQUIDATOR OF | ) | **ORDER** |
| KENTUCKY HEALTH COOPERATIVE, | ) | |
| INC., | | |
| | | |
| Defendant. | | |

*** *** *** ***

Federal judges often find themselves at the intersection of state law and federal law and faced with the dilemma of which direction to turn. Occasionally, an area of state law can circumvent the Founding Fathers' dictate that federal law reign supreme, but only in rare situations. After several hearings and many hundreds of pages of briefing, the Court finds that this situation does not arise here. Kentucky's prohibition of arbitration between insolvent insurance companies and third-party contractors does not trump the mandate of the Federal Arbitration Act that valid arbitration agreements must be upheld. For the following reasons, the Liquidator's motions to dismiss are **DENIED** and the Plaintiffs' motions to compel arbitration are **GRANTED**.

**I**

The Kentucky Health Cooperative (KYHC) sought approval from the Center for Medicare and Medicaid Services (CMS) to offer health plans to Kentucky citizens in 2011 and 2012. [R. 4-1 at 2.] During this time, KYHC contracted with Beam Partners, LLC, whereby Beam Partners would provide management and support services to KYHC. [R. 4-2.] Terry S.

Shilling is the sole member of Beam Partners.  [R. 1 at ¶ 2.]  Through this Management and

Development Agreement (MDA), Beam Partners agreed to train and orient members of the

KYHC board of directors, apply for and obtain licensure for KYHC through the Kentucky

Department of Insurance, apply for KYHC's tax-exempt status, provide consulting services to

KYHC regarding internal systems and processes, identify and screen candidates for KYHC's

support services, and provide interim management assistance until KYHC installed permanent

officers.  [R. 4-1 at 3.]  The MDA included a section where parties agreed to arbitrate claims and

disputes arising under or relating to the MDA.  [R. 4-2 at 10–11.]

Similarly, KYHC contracted with Milliman, Inc., for Milliman to perform actuary and

consulting services to KYHC [*Milliman, Inc., v. Roof*, 3:18-cv-00012-GFVT, R. 1-2], and CGI

Technologies and Solutions, Inc., agreed to perform administrative services for KYHC [*Atkins v.

CGI Techs. & Sols., Inc.*, 3:16-cv-00037-GFVT, R. 9-2].  Significantly, each of these agreements

also contained arbitration clauses.  [*Milliman, Inc., v. Roof*, 3:18-cv-00012-GFVT, R. 1-2 at ¶ 5;

*Milliman, Inc., v. Roof*, 3:18-cv-00012-GFVT, R. 1-3 at ¶ 4; *Atkins v. CGI Techs. & Sols., Inc.*,

3:16-cv-00037-GFVT, R. 9-2 at 26–27.]

By the end of 2015, KYHC was insolvent and placed into rehabilitation by Franklin

Circuit Court in Franklin County, Kentucky.  [R. 4-3 at 3.]  Pursuant to KRS § 304.33-010, *et

seq.*, Franklin Circuit Court placed KYHC into liquidation on January 15, 2016, and appointed

H. Brian Maynard, Commissioner of the Kentucky Department of Insurance, as the Liquidator.

*Id*. at 4.  Jeff Gaither and David Hurt were appointed as Special Deputy Liquidators.  *Id*.


Pursuant to the Liquidation Order,

> The Liquidator and the Special Deputy Liquidators are hereby authorized to deal with the property, business, and affairs of KYHC and KYHC's estate, and in any necessary forum, to sue or defend for KYHC, or for the benefit of KYHC's policyholders, creditors, or shareholders in the courts and tribunal, agencies or arbitration panels of this states and other states, or in any applicable federal court in the Liquidator's name as Commissioner of the Kentucky Department of Insurance, in his capacity as Liquidator, or a Special deputy in his capacity as Special Deputy Liquidator, or in the name of KYHC.

*Id*. at 8. Since that time, Nancy G. Atkins has replaced H. Brian Maynard as Commissioner of the Kentucky Department of Insurance, and thus also as the Liquidator. *See* KRS § 304.33-200. Donald Roof was also appointed as a Deputy Litigator for KYHC on August 14, 2017. [*Milliman, Inc., v. Roof*, 3:18-cv-00012-GFVT, R. 1 at 2.]

On May 13, 2016, the Liquidator sued CGI in Franklin Circuit Court for breach of contract and tort claims. [*Atkins v. CGI Techs. & Sols., Inc.*, 3:16-cv-00037-GFVT, R. 71-1 at 2.] The Liquidator refused to honor the arbitration clause, so CGI removed that claim to this Court and filed a Petition to Compel Arbitration. *Id*. Those actions were consolidated. [*Atkins v. CGI Techs. & Sols., Inc.*, 3:16-cv-00037-GFVT, R. 8.]

That fall, the Liquidator sued Beam Partners and Terry Shilling, along with Janie Miller,[1] Joseph E. Smith,[2] the Officers and Board of Directors of KYHC, and CGI for similar breach of contract and tort claims. [R. 4-4.] The Liquidator again refused to arbitrate, and CGI removed that action to this Court on December 1, 2016. [*Jeff Gaither, Deputy Liquidator of Kentucky Health Cooperative, Inc. v. Beam Partners, LLC, et al.*, 3:16-cv-00094-GFVT, R. 1.] Beam Partners and Terry Shilling (collectively, "Beam Partners") then filed this present action, a Petition to Compel Arbitration, on January 6, 2017. [R. 1.]

Meanwhile, in *Atkins v. CGI*, the Liquidator sought remand back to Franklin Circuit

---

[1] Individually and as Chief Executive Officer of KYHC
[2] Individually and as Chairman of the Board of Directors for KYHC

3

Court.  KYHC is a Kentucky non-profit corporation with a principal place of business in Kentucky, while CGI is a business incorporated in Delaware with a principal place of business in Virginia.  [*Atkins v. CGI Techs. & Sols., Inc.*, 3:16-cv-00037-GFVT, R. 1 at 1.]  The amount in controversy exceeds $75,000.  *Id.*  Accordingly, under a traditional analysis of diversity jurisdiction, this Court has requisite authority and subject-matter jurisdiction.  28 U.S.C. § 1332(b).  However, the Liquidator sought remand on the basis of reverse preemption.  [*Atkins v. CGI Techs. & Sols., Inc.*, 3:16-cv-00037-GFVT, R. 49 at 3–4.]  On January 3, 2017, this Court determined that its federal diversity jurisdiction was not reverse preempted by application of the Kentucky Insurers Rehabilitation and Liquidation Law (IRLL) through the McCarran–Ferguson Act.  *Id.* at 16.  Accordingly, the Liquidator's Motion to Remand was denied.  *Id.*

Similarly, the Liquidator sought remand in the contract and tort action, *Gaither v. Beam*.  In *Gaither*, however, there was not complete diversity, as both plaintiffs and several defendants were residents of Kentucky.  [*Jeff Gaither, Deputy Liquidator of Kentucky Health Cooperative, Inc. v. Beam Partners, LLC, et al.*, 3:16-cv-00094-GFVT, R. 44 at 6.]  On March 31, 2017, this Court declined to sever the claims against the nondiverse parties and remanded for lack of jurisdiction.  *Id.* at 30.

After these developments, this Court denied CGI's Motion to Compel Arbitration without prejudice and directed the parties to re-brief the issue based on the significantly altered procedural posture.  [*Atkins v. CGI Techs. & Sols., Inc.*, 3:16-cv-00037-GFVT, R. 63.]  Instead, CGI appealed the Court's Order to the Sixth Circuit Court of Appeals.  [*Atkins v. CGI Techs. & Sols., Inc.*, 3:16-cv-00037-GFVT, R. 67.]  Pending a decision in that case, the Court stayed this action.  [R. 14.]

Early in 2018, the Sixth Circuit vacated this Court's Order denying CGI's Motion to Compel Arbitration and remanded for further proceedings. *Atkins v. CGI Techs. & Sols., Inc.*, 724 F. App'x 383 (6th Cir. 2018). The Court of Appeals reviewed only this Court's denial of the Motion to Compel Arbitration and did not review any decision involving abstention. *Id.* at 388. Accordingly, the Circuit Court determined that denial of the Motion to Compel Arbitration was premature insofar as it was based on reverse preemption under Kentucky's IRLL. *Id.* at 390–93. Because the case had been removed from state court and this Court had denied remand, the purposes served by the exclusive jurisdiction provision of the IRLL did not apply, and state interests could not trump federal interests in the disposition of the case. *Id.*

However, while removing the issue of IRLL reverse preemption from *Atkins v. CGI*, the Sixth Circuit did not resolve all issues, nor did the Sixth Circuit resolve the issue of reverse preemption in either this case or *Milliman v. Roof*. The Liquidator has filed a Supplemental Motion to Dismiss [R. 19] to revisit this issue, and the parties appeared before this Court for oral argument [R. 30].[3]

## II

In the initial Motion to Compel Arbitration, Beam Partners argued that the parties entered into a valid agreement to arbitrate and that this dispute fell within the scope of that agreement, therefore, the Federal Arbitration Act mandates arbitration. [R. 4-1 at 5.] The Liquidator disagreed, stating that the agreement was invalid under Kentucky law, and thus the Court could not compel arbitration. [R. 9-1 at 1–2.] Specifically, the Liquidator argued that Kentucky law reverse preempted federal diversity jurisdiction in this case. *Id.* In the alternative, the Liquidator

---

[3] Contemporaneous with this Opinion and Order, the Court issued an Opinion and Order in *Atkins v. CGI Techs. & Sols., Inc.*, to resolve similar issues.

requested this Court abstain from exercising jurisdiction. *Id*. Following the Sixth Circuit decision in *Atkins v. CGI*, the Liquidator supplemented the original motion to dismiss, arguing that the prior exclusive jurisdiction doctrine precludes this Court from exercising subject-matter jurisdiction and that Beam Partners' petition for arbitration was not ripe for review. [R. 19 at 5.]

## A

The Liquidator first claims that the McCarran–Ferguson Act reverse preempts this Court's diversity jurisdiction. [R. 9-1 at 9–10.] Because the IRLL vests exclusive jurisdiction in the Franklin Circuit Court for matters relating to an insurance company's liquidation, the Liquidator argues that this Court does not have subject-matter jurisdiction. The Court has already rejected this argument in *H. Nancy G. Atkins, Liquidator of Kentucky Health Cooperative, Inc. v. CGI Techs. & Sols., Inc.*, 3:16-cv-00037-GFVT, and the teaching of the Sixth Circuit agrees: "the district court's jurisdictional ruling, rejecting the Liquidator's argument that Kentucky's IRLL reverse-preempted the federal diversity jurisdiction statute, is consonant with Sixth Circuit law and the majority view among the circuits." *Atkins v. CGI Techs. & Sols., Inc.*, 724 Fed. App'x 383, 388 (6th Cir. 2018). Nevertheless, the Court reiterates that ruling here.

Parties agree that the "fundamental tenets of diversity jurisdiction" are present. As required by 28 U.S.C. § 1332(a)(1), there is complete diversity amongst the parties. Beam Partners, LLC is a business incorporated in Georgia, and its only member, Terry S. Shilling, is also a citizen of Georgia. [R. 1 at 1.] Brian Maynard is the court-appointed liquidator of KYHC, which is a non-profit corporation that has its principal place of business in Kentucky. *Id*. at 2. The amount in controversy exceeds $75,000. 28 U.S.C. § 1332(b). Therefore, under a

traditional analysis of diversity jurisdiction, this Court has the requisite authority and subject-matter jurisdiction to adjudicate this dispute.

Nonetheless, the question presented is whether federal law has opened the door for state law to reverse preempt the diversity jurisdiction statute. The Liquidator seeks to expand the existing McCarran–Ferguson reverse preemption framework to prevent Beam Partners from seeking relief in federal court. [R. 9-1 at 11.] However, the Constitution prevents this Court from ruling so expansively. *See, e.g.*, *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 880 (1985) ("Although the McCarran–Ferguson Act exempts the insurance industry from Commerce Clause restrictions, it does not purport to limit in any way the applicability of the Equal Protection Clause"); *AmSouth Bank v. Dale*, 386 F.3d 763, 783 (6th Cir. 2004) ("courts tend to look unfavorably on claims of McCarran–Ferguson preemption of . . . the removal statutes so as to insulate that action from the federal courts"). Most Circuit Courts of Appeals that have addressed this question have either rejected the argument or expressed skepticism in applying McCarran–Ferguson to the federal diversity jurisdiction statute. *See, e.g., AmSouth Bank*, 386 F.3d at 783; *Dykhouse v. Corp. Risk Mgmt. Corp.*, No. 91-1646, 1992 WL 97952 *2 n.9 (6th Cir. May 8, 1992) (unpublished *per curiam* decision); *Hawthorne Savs. F.S.B. v. Reliance Ins. Co. of Ill.*, 421 F.3d 835, 843 (9th Cir. 2005), *Gross v. Weingarten*, 217 F.3d 208, 222 (4th Cir. 2000); *Munich Am. Reins. Co. v. Crawford*, 141 F.3d 585, 595–96 (5th Cir. 1998); *Murff v. Prof'l Med. Ins. Co.,* 97 F.3d 289, 293 (8th Cir. 1996)).

After further research, the Court found one example of McCarran–Ferguson reverse preempting federal diversity jurisdiction. *See W. Ins. Co. v. A & H Ins., Inc.*, 784 F.3d 725 (10th Cir. 2010). Western Insurance Company became insolvent and was liquidated pursuant to the

Utah Insurer Receivership Act. *Id.* at 726. The district court in this matter appeared to intertwine analysis of McCarran–Ferguson with discussions of abstention. *Id.* at 728–29 ("the court proceeded to mix the two doctrines by referring to abstention under the McCarran–Ferguson Act") (internal quotation marks omitted). The appellate court in this case determined that the district court had abstained due to McCarran–Ferguson reverse preemption and that the "order was 'based to a fair degree' upon lack of subject matter jurisdiction." *Id.* at 729. Accordingly, the Court of Appeals was unable to rule on the merits of the district court's analysis as they lacked appellate jurisdiction to review the district court. *Id.* Even in light of *W. Ins. Co.*, this Court has been unable to find a Court of Appeals decision that permits federal diversity jurisdiction to be reverse preempted by the McCarran–Ferguson Act.

There are important Constitutional reasons why this is the case. Federal diversity jurisdiction, 28 U.S.C. § 1332, and the removal mechanism available in 28 U.S.C. § 1441, were enacted by Congress through its authority under Article 1, Section 8, Clause 9 ("To constitute Tribunals inferior to the Supreme Court") and Article III of the United States Constitution. Accordingly, the framework established by McCarran–Ferguson does not apply when it comes to federal diversity jurisdiction.

Moreover, consistent with the Supremacy Clause, U.S. Const. art. VI, cl. 2, federal jurisdiction prevails over conflicting state forum provisions. *See also Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53 (1982). The Supremacy Clause states that, "the Laws of the United States which shall be made in Pursuance" of the Constitution "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. "Conflict preemption occurs where compliance with both federal and state regulations is a physical impossibility, or where state law

stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *State Farm Bank v. Reardon*, 539 F.3d 336, 342 (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)) (internal quotations omitted). In the case at hand, application of the Kentucky IRLL's exclusive jurisdiction provision would directly conflict with federal law, therefore, the IRLL jurisdiction provision must be preempted by the federal removal and diversity subject matter jurisdiction statutes resulting in this Court being appropriately vested with the subject-matter jurisdiction needed to adjudicate this dispute.

## B

## 1

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, "manifests a liberal federal policy favoring arbitration agreements." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626 (6th Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)) (internal quotation marks omitted). Section 2 of the FAA states that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Under § 4, when a party is "aggrieved by the failure of another party to arbitrate under a written agreement for arbitration," that party "may petition a federal court for an order directing that such arbitration proceed in the manner provided for" by the contract. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4) (internal quotation marks omitted). According to the United States Supreme Court, the FAA "places arbitration agreements on an equal footing with other contracts,

and requires courts to enforce them according to their terms." *Id*. at 67 (internal citations omitted); *see also AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Under the FAA, when contracts contain arbitration clauses, federal courts "are to examine the language of the contract in light of the strong federal policy in favor of arbitration," and are required to resolve any ambiguities in the agreement or doubts as to the parties' intentions in favor of arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (explaining that when the contract in question contains an arbitration clause, courts should presume arbitraibility and should not deny an order to arbitrate the grievance "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be in favor of coverage.") (internal citations and quotation marks omitted). Despite the presumption in favor of arbitration, however, a party cannot be compelled to arbitrate "any dispute that the party has not agreed to so submit." *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003).

Before compelling an unwilling party to settle a dispute by arbitration, the Court must apply a two-part test "to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties, and that the specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624. Although the FAA "preempts state laws and policies regarding arbitration," in determining whether a valid agreement to arbitrate exists between the parties, the Court should apply state contract law, "provided the contract law applied is general and not specific to arbitration clauses." *Fazio v. Lehman Bros.*,

*Inc.*, 340 F.3d 386, 392–93 (6th Cir. 2003) (citing *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996)).

The Sixth Circuit has recognized, however, that even when applying state-law principles of contract interpretation, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Bratt Enters., Inc.*, 338 F.3d at 613 (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 475–76 (1989)). The court then "shall order arbitration upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Rent-A-Center*, 561 U.S. at 68 (quoting 9 U.S.C. § 4) (internal quotations omitted).

Finally, in evaluating motions to compel arbitration, "Courts treat the facts as they would in ruling on a summary judgment." *Diversicare Leasing Corp. v. Hutchinson*, Civil Action No. 17-42-HRW, 2018 WL 771320, at *2 (E.D. Ky. Feb. 7, 2018) (quoting *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 864 (N.D. Ohio 2013)). Accordingly, the party opposing arbitration must show "a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The party opposing arbitration also has an evidentiary burden of demonstrating that the arbitration agreement itself, rather than the contract in which it is found, is unenforceable. *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000). In doing so, the party "seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Id.*; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

The arbitration clause in question is located at § 10.6 on page ten of the MDA. [R. 4-2 at 10.] Specifically, it states:

10.5 Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky.

10.6 Dispute Resolution

The parties agree that any claim or dispute arising under, or relating to this Agreement shall be resolved through this dispute resolution process. Either party may initiate the dispute resolution process by a written notice to the other and both parties shall use reasonable efforts to attempt to resolve the dispute informally and quickly. If Developer and the Cooperative are unable to resolve the dispute through informal means after a period of thirty (30) days, either may submit the dispute to arbitration using the arbitration rules of the American Health Lawyers Dispute Resolution Service [http://www.healthlawyers.org/adr], except to the extent that provisions in this Agreement supersede provisions in those rules, this Agreement shall control. If there is a readily determinable amount in dispute and it is $10,000 or less, a single arbitrator shall be used; if the amount exceeds $10,000 or cannot be readily determined, the parties shall each select an independent reviewer/arbitrator with experience in the subject matter of the dispute. The two reviewers/arbitrators shall select the third reviewer/arbitrator. The parties shall share the costs of the arbitrator(s) and any fee imposed by AHLA to use the service. All other costs and expenses of the dispute resolution process, including actual attorney's fees, shall be paid by the party that incurred them. The parties agree that the decision of the arbitration panel is final, binding, and not appealable. Any arbitration must occur in Lexington, Kentucky. Neither the filing of a dispute nor participation in the dispute resolution process pursuant to this Section 10.6 shall constitute grounds for termination of this Agreement.

*Id*. at 10–11. The parties agree, under the FAA, this is a valid arbitration agreement. First, the contract itself is valid. In Kentucky, a valid contract must have an offer, an acceptance, "full and complete terms," and sufficient consideration. *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013). Neither party asserts that the MDA lacks one of these elements. In order to show validity of an arbitration agreement, Kentucky law provides for a

burden-shifting framework: the party seeking arbitration satisfies its prima facie burden by simply providing a copy of the written and signed arbitration agreement, then the burden shifts to the opposing party to show a lack of an agreement. *MHC Kenworth–Knoxville/Nashville v. M & H Trucking, Inc.*, 392 S.W.3d 903, 906 (Ky. 2013). Beam Partners has provided the agreement [R. 4-2] and the Liquidator has provided no evidence, much less meet the heavy burden, to suggest no agreement exists. *See MHC Kenworth–Knoxville/Nashville*, 392 S.W.3d at 906. Therefore, the first part of *Javitch* is satisfied; a valid agreement between the Liquidator and Beam Partners exists. *Javitch*, 315 F.3d at 624.

The next question is whether this dispute falls within the substantive scope of the MDA. *Id*. Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Here, the arbitration clause is broad: "any claim or dispute arising under, or relating to this Agreement shall be resolved through this dispute resolution process." [R. 4-2 at 10.] Thus, absent an express provision in the agreement excluding a specific dispute, and absent "forceful evidence" that the parties intended to exclude a specific dispute, the dispute is governed by the arbitration clause. *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003). The underlying dispute is a claim by the Liquidator that Beam Partners breached the MDA, a dispute that clearly relates to the MDA. Further, no language in the agreement and no evidence provided by the parties display an intent to exclude breach of contract claims from the arbitration requirement. Accordingly, the Court finds that the dispute falls within the substantive scope of the MDA. *See Javitch*, 315 F.3d at 624.

**2**

Despite its validity under the FAA and Kentucky contract law, the Liquidator contests the validity of the arbitration agreement as inconsistent with the Kentucky IRLL. The purpose of the IRLL is stated as follows:

> (4) Purpose. The purpose of this subtitle is the protection of the interests of insureds, creditors, and the public generally, with minimum interference with the normal prerogative of proprietors, through:
>
> (a) Early detection of any potentially dangerous condition in an insurer, and prompt application of appropriate corrective measures, neither unduly harsh nor subject to the kind of publicity that would needlessly damage or destroy the insurer;
>
> (b) Improved methods for rehabilitating insurers, by enlisting the advice and management expertise of the insurance industry;
>
> (c) Enhanced efficiency and economy of liquidation, through the consolidation of matters relating to the liquidation under the supervision of a single court so as to avoid divergent rulings by a multiplicity of judicial tribunals and through clarification and specification of the law, to minimize legal uncertainty and litigation;
>
> (d) Equitable apportionment of unavoidable loss;
>
> (e) Lessening the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process, and by extension of the scope of personal jurisdiction over debtors of the insurer outside this state;
>
> (f) Regulation of the insurance business by the impact of the law relating to delinquency procedures and substantive rules on the entire insurance business; and
>
> (g) Provision for a comprehensive scheme for the supervision, rehabilitation, and liquidation of insurance companies and those subject to this subtitle as part of the regulation of the business of insurance, insurance industry, and insurers in this states. Proceedings in cases of insurer insolvency and delinquency shall be deemed an integral aspect of the business of insurance and are of vital public interest and concern.

KRS § 304.33-010(4). The IRLL grants exclusive jurisdiction to Franklin Circuit Court "to entertain, hear, or determine all matters in any way relating to any delinquency proceeding under this subtitle, including but not limited to all disputes involving purported assets of the insurer."

KRS § 304.33-040(3)(a). Once a delinquency proceeding has been initiated, the provisions of the IRLL "shall govern those proceedings, and all conflicting contractual provisions contained in any contract between the insurer which is subject to the delinquency proceeding and any third party shall be deemed subordinated to the provisions of this subtitle." KRS § 304.33-010(6). The Liquidator argues, therefore, that the breach of contract claim, which is subject to the arbitration agreement in the MDA, must be submitted to the Franklin Circuit Court as part of the ongoing delinquency proceedings, and this Court should not compel arbitration. [R. 9; R. 19.]

**3**

Typically, when a state law conflicts with a federal law, such as the apparent conflict here between the exclusive jurisdiction given to the Franklin Circuit Court by the IRLL and the preference for arbitration expressed by the FAA, the federal law preempts the state law, rendering the state law without effect. U.S. CONST. art. VI, cl. 2; *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008). However, the McCarran–Ferguson Act carved out an exception to this general rule in instances where state laws regulate the "business of insurance." 15 U.S.C. § 1011 *et seq*. Congress sought, under the Commerce Clause as derived in Article I, Section 8 of the United States Constitution, to prevent general federal laws from interfering with state insurance regulations. *See AmSouth Bank v. Dale*, 386 F.3d 763, 780 (6th Cir. 2004); *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 428 (2003). McCarran–Ferguson establishes situations of "reverse preemption," where a state law preempts the federal law. "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance . . . ." 15 U.S.C. § 1012(b). In order for

the McCarran–Ferguson Act to reverse preempt a federal law, (1) the state statute must have been enacted for the purpose of regulating the business of insurance, (2) the federal statute in question must not specifically relate to the business of insurance, and (3) the application of the federal law would "invalidate, impair, or supersede" the state statute. *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999).

But determining whether a law "regulates the business of insurance" has proved difficult. The Supreme Court has identified three criteria, none of which is itself determinative, to determine whether a particular practice is part of the "business of insurance": "*first,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982) (citing to *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205 (1979). When determining whether a law was enacted for the purpose of regulating the business of insurance, the Supreme Court explains that the law must "possess the 'end, intention, or aim' of adjusting, managing or controlling the business of insurance." *U.S. Dept. of the Treasury v. Fabe*, 508 U.S. 491, 505 (1993) (quoting Black's Law Dictionary 1236, 1286 (6th ed. 1990). Laws enacted for the purpose of regulating the business of insurance necessarily include more than just practices of the business of insurance. *Id*. In *Fabe*, the Court determined that an Ohio statute was "aimed at protecting or regulating the performance of an insurance contract," and thus "enacted for the purpose of regulating the business of insurance." *Id*. (quotations and citations omitted).

The Liquidator claims application of the McCarran–Ferguson Act results in the IRLL

reverse preempting the FAA, and therefore, this Court should deny Beam Partners' motion to compel arbitration. [R. 9-1 at 6.] The Liquidator relies heavily on a Kentucky case, *Ernst & Young, LLP v. Clark*, 323 S.W.3d 682 (Ky. 2010). The Court thus begins with a discussion of this case.

AIK Comp was a self-insured workers compensation group, annually audited by an independent certified public accountant. *Id*. at 685–86. From 1999 to 2003, Ernst & Young contracted with AIK Comp to perform this audit, and that contract included an arbitration clause. *Id*. The audits performed by Ernst & Young indicated that AIK Comp was "financially sound," maintaining sufficient assets to cover claims of its insured workers. *Id*. at 686. In 2004, however, AIK Comp contracted with a different accounting firm, which discovered AIK Comp was actually operating in a deficit and unable to pay claims. *Id*. AIK was placed in rehabilitation in Franklin Circuit Court under the IRLL. *Id*. During rehabilitation, the appointed Rehabilitator sued Ernst & Young, alleging the audits were negligently prepared. *Id*. Ernst & Young moved to compel arbitration in Franklin Circuit Court. *Id*. at 687.

The Kentucky Supreme Court found the arbitration agreements were facially valid, but ultimately unenforceable. *Id*. The court applied the factors of *Humana Inc. v. Forsyth*, and determined that "the IRLL's broad grant of exclusive jurisdiction to the Franklin Circuit Court in matters relating to the delinquency of insurance companies preempts and supersedes the Federal Arbitration Act and its policy favoring arbitration. *Id*. at 688. Under the first step, the court stated, "There can be no reasonable doubt that the IRLL, of which KRS 304.33-010(6) is a part, was enacted to regulate the 'business of insurance.'" *Id*. The breach of contract claims brought by the Rehabilitator, though not insurance contracts between the insurer and the insured, related

to the audits mandated by Kentucky insurance law to monitor the solvency of the insurance

company. *Id*. at 689. Next, the court acknowledged that the FAA did not specifically relate to

the business of insurance. *Id*. In considering whether the third part of the *Forsyth* test was

satisfied, the court determined that, because "arbitration is inconsistent with parts of the IRLL,"

the FAA would invalidate, impair, or supersede the IRLL, thus commanding reverse preemption.

*Id*. The prescribed purpose of the IRLL is "enhanced efficiency and economy of liquidation,

through the consolidation of matters relating to the liquidation under the supervision of a single

court so as to avoid divergent rulings by a multiplicity of judicial tribunals," and the court found

arbitration would impair this purpose. *Id*.

When a federal court hears a case based on diversity jurisdiction, the court must apply the

state law of the forum state as established by the state's highest court and legislature. *Erie R. Co.*

*v. Tompkins*, 304 U.S. 64, 77–78 (1938). If, when applying the law of the forum state, there is a

definitive state law precedent, the Court is bound by that precedent. *Foster v. Caterpillar*

*Tractor Co.*, 714 F.2d 654, 656 (6th Cir. 1983). However, a state court's interpretation on an

issue of federal law is "entitled to no deference whatsoever." *First Am. Title Co. v. Devaugh*,

480 F.3d 438, 455 (6th Cir. 2007). The interpretation of the Kentucky IRLL is a matter of state

law, but the application of the FAA and *Humana Inc. v. Forsyth* is an inquiry of federal law.

Federalism does not require this Court to follow the holdings of the Kentucky Supreme Court

with regard to federal questions. *Kuhnle Bros., Inc. v. Cty. Of Geauga*, 103 F.3d 516, 520 (6th

Cir. 1997). At most, the decision in *Ernst & Young* is non-binding, persuasive authority, which

this Court is free to reject or to follow, based on an independent interpretation of federal law.

*Commodities Exp. Co. v. Detroit Int'l Bridge Co.*, 695 F.3d 518, 528 (6th Cir. 2012). The Sixth

Circuit has also expressed reservation in applying *Ernst & Young*, noting that the reverse preemption doctrine should be applied narrowly. *Atkins v. CGI Techs. & Sols., Inc.*, 724 F. App'x 383, 392 (6th Cir. 2018).

For reverse preemption under the McCarran–Ferguson Act, the Court must initially find that the state statute was enacted for the purpose of regulating the business of insurance. *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999). The parties first disagree as to the scope of this analysis. Beam Partners looks at the individual statutes, claiming that KRS §§ 304.33-010(5)–(6) regulate contracts with third parties and, while regulating management of a business, do not regulate the insurance business itself.

The Liquidator disagrees, pointing to the entire IRLL and stating that the business of insurance "necessarily encompasses more than just the 'business of insurance.'" *U.S. Dept. of the Treasury v. Fabe*, 508 U.S. 491, 505 (1993). The assumption that KRS §§ 304.33-010(5)–(6) necessarily were enacted for the purpose of regulating the business of insurance just by virtue of being included in the IRLL is just too broad.

Analyzing the IRLL as a whole in this situation presents an opportunity for state legislatures to bypass the Supremacy Clause and federal law simply by including an unrelated provision into an act that generally regulates insurance. While KRS §§ 304.33-010(5)–(6) are not entirely unrelated to the IRLL, the Court rejects the Kentucky Supreme Court's finding that simply because a statute is included in the IRLL, the statute was enacted to regulate the "business of insurance." *Ernst & Young*, 323 S.W.3d at 688.

Furthermore, upon consideration of the *Pierno* factors, the Court finds that KRS §§ 304.33-010(5)–(6) was not enacted for the purpose of regulating the "business of insurance."

The outcome of this litigation does not affect the policy holders of KYHC, there is no transfer or spreading of insurance policy risk, and this has no direct effect on the relationship between KYHC and its insured policy holders. *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982). This litigation involves a contract dispute between a business and its management company, not an insurance contract. *Fabe*, 508 U.S. at 505. Simply because the business is an insurance company and has become insolvent is not relevant to the regulation of the business of insurance. *See id.* at 506.

Both parties agree that the FAA does not specifically relate to the business of insurance, so the Court now turns to whether the application of the FAA would "invalidate, impair, or supersede" the state statute. *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999). In the Sixth Circuit, this element is to be "evaluated narrowly, not broadly." *Atkins*, 724 F. App'x at 392. The Kentucky Supreme Court did not provide a robust analysis, merely assuming that because the clause in the FAA was inconsistent with KRS §§ 304.33-010(5)–(6), then the FAA would supersede the IRLL. *Ernst & Young*, 323 S.W.3d at 689. This Court disagrees. Arbitration does not deprive the Liquidator of any substantive rights, only altering the forum in which the Liquidator may pursue those rights. Mandating arbitration in this case does not alter the disposition of claims of the policy holders and does not "invalidate, impair, or supersede" the IRLL as a whole. The arbitration of the Liquidator's claims against third party contractors does not impair the delinquency proceedings in state court, nor does it invalidate the protections of the IRLL.

The Liquidator cites to several cases where courts found that the McCarran–Ferguson Act allowed a state's insurance law to reverse preempt the FAA. However, each of these cases

involved the contract between an insured and an insurer. *See Stephens v. American Intern. Ins. Co.*, 66 F.3d 41 (2d Cir. 1995); *Munich Am. Reins. Co. v. Crawford*, 11 F.3d 585 (5th Cir. 1998); *Davister Corp. v. United Republic Life Ins. Co.*, 152 F.3d 1277 (10th Cir. 1998); *Standard Security Life Ins. Co. v. West*, 267 F.3d 821 (8th Cir. 2001); *Mut. Reinsurance Bureau v. Great Plains Mut. Ins. Co., Inc.*, 969 F.2d 931 (10th Cir. 1992). Had this case involved a policy holder or a party covered under an insurance policy issued by KYHC, this litigation would be the concern contemplated by *Union Labor Life Ins. Co. v. Pireno*, and mandating arbitration would change the substantive rights of the parties involved, however, this is not the case. Therefore, the Court finds that the McCarran–Ferguson Act does not allow reverse-preemption of the FAA when the Liquidator of an insurance company brings suit against a third-party independent contractor for tort or breach of contract claims.

## C

In the alternative, the Liquidator requests this Court stay the current matter pending resolution of the liquidation proceeding in Franklin Circuit Court. The Liquidator offers two separate theories: abstention under the principles of *Colorado River Water Conservation Dist. v. United States* or abstention under the principles of *Burford v. Sun Oil Co.*. However, neither abstention doctrine is applicable in this case.

## 1

The Supreme Court has recognized that situations exist where a federal court should abstain from exercising jurisdiction over a case that "involves substantially the same issues and substantially the same parties as a parallel case in state court." *Total Renal Care, Inc. v. Childers Oil Co.*, 743 F.Supp.2d 609, 612 (E.D. Ky. 2010) (citing *Colorado River Water Conservation*

*Dist. v. United States*, 424 U.S. 800, 817–21 (1976)).  However, because "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress," *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996), abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813 (quoting *Cty. Of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)); *see also Gray v. Bush*, 628 F.3d 779, 783 (6th Cir. 2010).  For this reason, "Only the 'clearest of justifications' will support abstention."  *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013) (quoting *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002)).

In order to determine whether abstention under *Colorado River* is appropriate, the Court must first determine whether there are parallel actions proceeding in both state and federal courts.  *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998).  If "the parities are substantially similar," and "the claims raised in both suits are predicated on the same allegations as to the same material facts," the actions "will come close enough to count as parallel." *Preferred Care of Del., Inc. v. VanArsdale*, 676 F. App'x 388, 393 (quoting *Romine*, 160 F.3d at 340).  The Liquidator points to *Preferred Care of Delaware, Inc.* to show that this case, albeit concerning arbitration, is parallel to *Gaither v. Beam*.  [R. 19 at 15.]  While the subject of arbitration does not foreclose abstention under *Colorado River*, the parallel cases of *Preferred Care of Delaware* both turned on the same legal question: whether, under the alternative dispute resolution agreement, VanArsdale had to arbitrate his claims against Preferred Care.  *Preferred Care*, 676 F. App'x at 394.  Both here and in *Gaither v. Beam*, the initial question involves the enforceability of the arbitration clause.  This finding, however, does not end the analysis.  When

actions are parallel, the Court must then balance eight separate factors to determine whether

abstention would be appropriate:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained . . . (5) whether the source of governing law is state or federal . . . (6) the adequacy of the state court action to protect the federal plaintiff's rights . . . (7) the relative progress of the state and federal proceedings . . . and (8) the presence or absence of concurrent jurisdiction . . . .

*Romine*, 160 F. 3d at 340–41. These factors are not a checklist, but rather considerations for the

Court when using its discretion to abstain in a matter.

First, this action does not involve res or property. The res involved in the liquidation

proceedings in Franklin Circuit Court are not at issue in this case. Additionally, the federal

forum is located less than a quarter of a mile from the state forum, providing no more or less

convenience to the parties. Furthermore, the state court action would not adequately protect

Beam Partners' rights, given that Kentucky precedent is dictated by *Ernst & Young*, which

allows for reverse preemption of the FAA and denial of Beam Partners' petition for arbitration.

Thus, the first, second, and sixth factors squarely oppose abstention.

Factors three, four, and seven relate to the parallel proceeding in state court. Here, there

is no danger of piecemeal litigation. While similar, the contracts involved in *Gaither v. Beam*

are all different, and all include different provisions and protections. Resolving the contract

dispute between the Liquidator and Beam Partners does not impact the resolution of other

disputes and brings no danger of disparate judgments. Again, arbitration in this matter does not

affect the liquidation proceedings and the policy holders. Thus, because there is no danger of

piecemeal litigation, the third factor does not encourage abstention.

While Franklin Circuit Court first obtained jurisdiction, the primary focus of the litigation in the parallel proceeding has concerned the liability of Janie Miller and Joseph Smith, neither of which are a party to this matter in federal court. [R. 22 at 11.] This Court has spent the last two years hearing oral arguments and conducting briefing on this specific arbitration issue, while the parties indicate that the Franklin Circuit Court has not yet considered it. [R. 19 at 19–20; R. 22 at 11–12.] So, while factor four favors abstention, the time spent debating this issue in federal court far exceeds the time devoted to this issue in state court, and factor seven strongly weighs against abstention. Factors five and eight relate to the jurisdiction and choices of law in both forums. Both forums have concurrent jurisdiction, and both courts could rule on the enforceability of arbitration. The issues relating to contract law and the IRLL are matters of Kentucky law, while the questions involving the McCarran–Ferguson Act and the FAA are matters of federal law. The Franklin Circuit Court could certainly rule on this issue, but so can this Court. Such factors do not clearly support abstention.

Without the "clearest of justifications" that abstention is proper, the Court has a duty to exercise the jurisdiction conferred upon it by Congress. *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). After weighing all eight factors, only factor four suggests abstention is appropriate, while several other factors strongly oppose abstention. Accordingly, the Court finds that the narrow exception to jurisdiction provided by *Colorado River* abstention does not apply to this matter.

**2**

Abstention under *Burford v. Sun Oil Co.* is equally inappropriate. In *Burford*, the Supreme Court ruled that the federal district court should have dismissed the case because of the

existence of complex state administrative issues, namely, oil drilling rights. 319 U.S. 315 (1943). But such dismissal should only occur in extraordinary circumstances. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726 (1996). A federal court may only dismiss a case if it presents "difficult questions of state law" that concern state policy issues or if the exercise of jurisdiction in federal court would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id*. at 726–27; *New Orleans Public Service, Inc. (NOPSI) v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976).

But this case presents no novel questions of state law or state policy. Nor does this case interfere in the disposition of property in liquidation. *Burford* abstention evidences "a reluctance to intrude into state proceedings where there exists a complex state regulatory system." *NOPSI*, 491 U.S. at 361. Such a "complex state regulatory system" is not the issue at hand. This Court is well equipped to handle questions concerning the application of federal law, preemption, and reverse preemption. Further, as noted above, abstention merely denies Beam Partners' petition for arbitration without adequate review on the merits. Thus, the Court declines to abstain from this case.

### D

Additionally, the Liquidator adds two arguments challenging this Court's ability to hear this action. First, the Liquidator claims the prior exclusive jurisdiction doctrine bars jurisdiction here. [R. 19 at 6.] The doctrine of prior exclusive jurisdiction states, "If two suits are in rem or quasi in rem, so that the court must have possession or some control over the property in order to grant the relief sought, the jurisdiction of one court must yield to that of the other." *Cartwright*

*v. Garner*, 751 F.3d 752, 761 (6th Cir. 2014.)  This Court must assess "whether the doctrine of prior exclusive jurisdiction applies at the time of filing, and not any time thereafter." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 803 (6th Cir. 2015).

*In rem* jurisdiction involves or determines "the status of a thing, and therefore the rights of persons generally with respect to that thing." *Black's Law Dictionary* (10th ed. 2014). Conversely, *in personam* jurisdiction involves or determines "the personal rights and obligations of the parties" and is "brought against a person rather than a property." *Black's Law Dictionary* (10th ed. 2014).  "A normal action brought by one person against another for breach of contract is a common example of an action *in personam*."  R.H. Graveson, Conflict of Laws, 98 (7th ed. 1974).

If the Liquidator is successful in its tort claims against Beam Partners, the Liquidator will likely be able to collect monetary damages from Beam Partners, thus increasing the amount of assets that can be distributed among its creditors.  [R. 26 at 1–3.]  However, the Liquidator has not provided sufficient case law to convince the Court that this results in an *in rem* action governed by the prior exclusive jurisdiction doctrine.  The cases cited by the Liquidator involve creditors suing the insolvent company, whereas in the tort action here, the insolvent company is the plaintiff.  *See Gillis v. Keystone Mut. Cas. Co.*, 172 F.2d 826 (6th Cir. 1949); *Blackhawk Heating & Plumbing Co. Inc. v. Geeslin*, 530 F.2d 154 (7th Cir. 1976).  By the Liquidator's logic, all suits brought by an insolvent company would need to be heard by the court of liquidation simply because those suits could increase assets available for distribution during liquidation.

The Court is not convinced.  This is a petition to compel arbitration for a tort claim

involving a breach of contract. A favorable result in this matter does not affect the distribution of the liquidated assets held in Franklin Circuit Court. Nor does the Court need to have jurisdiction over the assets to resolve this matter. Thus, the Court finds that the doctrine of prior exclusive jurisdiction does not apply here.

The Liquidator also claims that Beam Partners has not complied with Kentucky's requirements for pursuing arbitration, and this Court cannot grant or deny relief without Beam Partners fully complying with Kentucky's arbitration requirements. [R. 19.] Under the IRLL, no party may institute an action against the liquidator without approval of the court. KRS § 304.33-270(1). However, the Federal Arbitration Act does not require parties to comply with state requirements *before* seeking a petition from federal court for arbitration. *See* 9 U.S.C. § 4. Requiring Beam Partners to comply with the IRLL before petitioning this Court assumes that the IRLL reverse preempts the Federal Arbitration Act. As explained below, it does not.

### E

Finally, having determined that the Liquidator's claims are subject to arbitration, this matter must be stayed pursuant to 9 U.S.C. § 3. Further, the Court will stay the pending state court proceedings against Beam Partners. Pursuant to the Anti–Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (emphasis added). As has been found by many other Courts in this district confronting the identical situation, an injunction is proper in these circumstances because it is "necessary to protect or effectuate [this Court's] judgments." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 894 (6th Cir. 2002); see also *Brookdale Senior*

*Living, Inc. v. Caudill*, No. CIV.A. 5:14-098-DCR, 2014 WL 3420783, at *10 (E.D. Ky. July 10, 2014); *Brookdale Sr. Living Inc. v. Stacy*, No. CIV.A. 5:13-290-KKC, 2014 WL 2807524 at *792 (E.D. Ky. June 20, 2014); *Brookdale Senior Living Inc. v. Hibbard*, No. CIV.A. 5:13-289-KKC, 2014 WL 2548117, at *10 (E.D. Ky. June 4, 2014); *GGNSC Vanceburg, LLC v. Hanley*, No. CIV.A. 13-106-HRW, 2014 WL 1333204, at *10 (E.D. Ky. Mar. 28, 2014); *GGNSC Vanceburg, LLC v. Taulbee*, No. 5:13-CV-71-KSF, 2013 WL 4041174, at *11 (E.D. Ky. Aug. 7, 2013), *appeal dismissed* (Mar. 13, 2014).

## III

The parties contracted to settle their disputes in arbitration, not in court. Simply because KYHC is now in liquidation proceedings does not change this agreement, and the Court has a duty to uphold it. Nor does this case present a unique situation where the Court should decline to exercise its jurisdiction. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1.      The Motion to Compel Arbitration by Petitioners Beam Partners, LLC, and Terry S. Shilling [**R. 4**] is **GRANTED**;

2.      The Liquidator's Motion to Dismiss [**R. 9**] and Supplemental Motion to Dismiss [**R. 19**] are **DENIED**;

3.      The Liquidator is hereby **COMPELLED** to resolve her claims in arbitration;

4.      Pursuant to 9 U.S.C. § 3, further proceedings in this matter are **STAYED** pending arbitration; and

5.      The State Court matter, insofar as it relates to the claims between the Liquidator and Beam Partners, LLC, and Terry Shilling, is **STAYED** pending arbitration.

This the 11th day of September, 2018.

Gregory F. Van Tatenhove
United States District Judge